```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF PUERTO RICO
```

| UNITED STATES OF AMERICA, | |
|---|---|
| **Plaintiff**, | |
| v. | **Criminal No.** 14-080 (FAB) |
| JOSE HECTOR GUIVAS-SOTO, | |
| **Defendant.** | |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Jose Hector Guivas-Soto ("Guivas")'s motion to dismiss the indictment based on his claim of selective prosecution. (Docket No. 104.) In the alternative, Guivas requests discovery and a hearing on the matter. Id. The government opposed the motion, (Docket No. 107), and Guivas replied, (Docket No. 116). For the reasons explained below, the Court **DENIES** defendant Guivas's motion.

### I.   BACKGROUND

**A.   Factual Summary**

The Court draws this factual summary from Federal Bureau of Investigation ("FBI") Special Agent Colin Dwyer's affidavit filed in support of the criminal complaint, (Docket No. 3-1).

Criminal No. 14-080 (FAB)                                                 2

On January 5, 2014, a fifteen-year-old female minor, Jane Doe,[1] was in Puerto Rico on vacation with her family and staying in a condominium in Isla Verde. (Docket No. 3-1 at p. 1.) At approximately 4:00 p.m. on that day, she left the condominium to take a walk after an argument with her sister. Id. About forty-five minutes later, defendant Guivas was driving his motorcycle in the area and saw Jane Doe walking alone. Id. at p. 2. He stopped to speak to her. Id.

Jane Doe told defendant Guivas her name and age (15 years old), and said that she was visiting Puerto Rico on vacation. (Docket No. 3-1 at p. 2.) Guivas told Jane Doe that he was forty-four years old and that his name was Hector. Id. After talking for a few minutes, Guivas offered to take Jane Doe for a ride on his motorcycle. Id. Jane Doe got on the motorcycle, and Guivas drove her to his residence in Puerto Nuevo. Id.

Once at Guivas's house, Guivas told Jane Doe that she could make $100 per night working at a strip club. (Docket No. 3-1 at p. 2.) Guivas explained to Jane Doe that she would have to tell people that her name was "Daisy" and that she was nineteen years old. Id. Guivas then made arrangements for Jane Doe to be interviewed by the manager at LIPS, a strip club in Hato Rey, at

---

[1] The Court refers to the victim in this case as "Jane Doe" to preserve her privacy.

Criminal No. 14-080 (FAB)                                                  3

9:00 p.m. that evening.  Id. at p. 3.  Defendant Guivas let Jane Doe use his cell phone to contact her family, instructing her to tell them that she was "OK."  Id.

At approximately 8:45 p.m. that evening, Guivas drove Jane Doe to LIPS strip club in Hato Rey for her 9:00 p.m. interview. (Docket No. 3-1 at p. 3.)  He wrote his phone number on the back of a flyer and gave it to her, explaining that he would pick her up at 4:00 a.m. when her shift was over.  Id.

Jane Doe met with the manager of LIPS, who told her that her new name would be "Fantasy."  (Docket No 3-1 at p. 4.)  During her shift, Jane Doe stripped on stage two times and gave multiple lap dances.  Id.  One customer, John Doe,[2] was at LIPS celebrating his bachelor party with some friends.  Id.  He paid Jane Doe for three lap dances.  Id.  During the lap dances, John Doe kissed Jane Doe, touched her breasts, and inserted his fingers into her vagina.  Id. He also invited Jane Doe to a party at his house and gave her his phone number.  Id. at p. 5.

When Jane Doe's shift was over at 4:00 a.m., she called defendant Guivas, but he did not answer.  (Docket No 3-1 at p. 5.) Jane Doe then called John Doe, who said that he would pick her up

---

[2] Although this individual's name was known to the FBI and is now known to the parties, the FBI affidavit supporting the criminal complaint refers to him as "John Doe."  The Court follows this convention for purposes of this Memorandum and Order.

in thirty minutes. Id. At about 4:30 a.m., John Doe arrived in a taxi at LIPS with an unknown male. Id. They drove Jane Doe and another female employee from LIPS to a residence in Ocean Park. Id. At the residence, Jane Doe was given various alcoholic beverages. Id. She had sex with John Doe twice, for which she was paid $100, and had sex with another unknown male, who paid her $20. Id. She left the residence with the other female employee later in the day on January 6, 2014, and after the two separated, a law enforcement officer found Jane Doe in a nearby restaurant. Id. at p. 6.

**B.  Criminal Charges**

On January 6, 2014, Puerto Rico police officers and FBI agents contacted defendant Guivas on his cell phone. (Docket No. 3-1 at p. 6.) Guivas initially denied any knowledge of the situation. Id. During a formal interview with law enforcement on January 7, 2014, Guivas said that Jane Doe used his phone to call her family, but that they parted ways immediately after. Id. at p. 7. In an interview with FBI agents the next day, however, Guivas admitted to transporting Jane Doe via motorcycle to his residence in Puerto Nuevo and ultimately to LIPS in Hato Rey. Id.

The United States filed a criminal complaint against Guivas on January 9, 2014. (Docket No. 3.) On January 30, 2014, a federal grand jury returned an indictment charging Guivas with violating 18

Criminal No. 14-080 (FAB)                                                5

U.S.C. § 2423(a), which makes it unlawful to "knowingly transport[] an individual who has not attained the age of 18 years . . . in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense."[3]  (Docket No. 15.)

No charges relating to the events of this case were brought against John Doe or any other individual.

## II.  DISCUSSION

Defendant Guivas raises a selective-prosecution claim, arguing that the government engaged in unconstitutional discrimination when it chose to bring charges against Guivas, who is "Puerto Rican," and declined to prosecute John Doe and his friends, who are "Caucasian-American" and committed offenses "similar" to those alleged to have been committed by Guivas.  (Docket No. 104.)  Guivas requests discovery, a hearing, and dismissal of the indictment.  Id.

**A.   Applicable Law for a Selective-Prosecution Claim**

The government has "broad discretion" in deciding whom to prosecute.  Wayte v. United States, 470 U.S. 598, 607 (1985).  This

---

[3] The federal grand jury also charged defendant Guivas with violating 18 U.S.C. § 1591(a).  (Docket No. 15.)  The United States moved to dismiss this second count, without prejudice, on December 5, 2014.  (Docket No. 75.)  The Court granted the United States' motion, (Docket No. 76), and thus only the single count of violating 18 U.S.C. § 2423(a) remains.

discretion is, of course, subject to constitutional constraints. United States v. Armstrong, 517 U.S. 456, 464 (1996). "One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." Id. (internal quotation marks and citations omitted).

A criminal defendant may seek judicial review of the government's decision to prosecute him by raising a selective-prosecution claim, which is "not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." Id. at 463. Prosecutors, however, are "presumed to have acted in good faith for reasons of sound governmental policy." United States v. Graham, 146 F.3d 6, 9 (1st Cir. 1998) (internal quotation marks and citation omitted). To dispel this presumption and prove a selective-prosecution claim, a criminal defendant must present "clear evidence" that the government's decision to prosecute (1) had a discriminatory effect, and (2) was motivated by a discriminatory purpose. Armstrong, 517 U.S. at 465.

Discovery concerning prosecutorial decisions intrudes on "a core executive constitutional function," diverts prosecutors' resources, and "may disclose the Government's prosecutorial

Criminal No. 14-080 (FAB)                                                              7

strategy." Id. at 465, 468. For these reasons, "[t]he justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for discovery in aid of such a claim." Id. at 468. Accordingly, the United States Supreme Court held in Armstrong that a defendant seeking discovery on a selective-prosecution claim must present "some evidence tending to show the existence of" both discriminatory effect and discriminatory intent. Id. at 465. The same standard applies when a defendant seeks an evidentiary hearing on a selective-prosecution claim. Graham, 146 F.3d at 9. If the government presents countervailing reasons that refute the claim of discrimination, however, the Court may be persuaded that discovery and a hearing would not be fruitful. Id.

**B.  Discriminatory Effect**

To establish discriminatory effect, the defendant must show that similarly situated individuals who do not share the defendant's protected characteristic were not prosecuted. Armstrong, 517 U.S. at 465. "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law

Criminal No. 14-080 (FAB)                                                8
_____

has not been enforced." United States v. Lewis, 517 F.3d 20, 27 (1st Cir. 2008).[4]

In determining whether an individual is a "similarly situated offender," courts must focus on factors that are "material" to the decision of whether to prosecute someone. Id. "Material prosecutorial factors are those that are relevant - that is, that have some meaningful relationship either to the charges at issue or to the accused - and that might be considered by a reasonable prosecutor." Id. Some legitimate prosecutorial factors are "'the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan.'" United States v. Magana, 127 F.3d 1, 9 (1st Cir. 1997) (quoting Wayte, 470 U.S. at 607).

Here, defendant Guivas contends that his identity as "Puerto Rican" is a protected class and that John Doe and his friends were

_____

[4] The Eleventh Circuit Court of Appeals defines a "similarly situated offender" as "one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant — so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan — and against whom the evidence was as strong or stronger than that against the defendant." United States v. Smith, 231 F.3d 800, 810 (11th Cir. 2000). The Fourth Circuit Court of Appeals adopted a similar definition, holding that offenders "are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." United States v. Olvis, 97 F.3d 739, 744 (4th Cir. 1996).

Criminal No. 14-080 (FAB)                                                9

"Caucasian-American" and "Anglo-American" and thus, outside Guivas's protected class. (Docket Nos. 104, 116.) Because the United States does not contest this characterization, the Court assumes for purposes of this Memorandum and Order that Guivas is a member of a protected class and that John Doe and his friends were outside that protected class.

Defendant Guivas next contends that John Doe and his friends violated 18 U.S.C. § 2421 (transportation for illegal sexual activity)[5] and 18 U.S.C. § 2422(a) (coercion to transport for illegal sexual activity)[6], either as principals or through aiding and abetting or conspiracy liability. (Docket No. 104 at p. 7.) Guivas argues that these two crimes are roughly the same as 18 U.S.C. § 2423(a) (transportation of minors for illegal sexual activity) - the crime for which he is charged. See Docket No. 104 at p. 7; Docket No. 116 at pp. 2-3.

---

[5] "Whoever knowingly transports any individual . . . in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2421.

[6] "Whoever knowingly persuades, induces, entices, or coerces any individual to travel . . . in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 2422(a).

Criminal No. 14-080 (FAB)                                                    10
_____

    Unlike section 2423(a), sections 2421 and 2422(a) do not require that the victim be a minor.  Because statutes specific to crimes against children likely have different enforcement priorities than similar statutes that do not specify vulnerable victims, the Court does not consider sections 2421 and 2422(a) to be "roughly the same" as section 2423(a) for purposes of a selective-prosecution claim.

    Although defendant Guivas does not argue it, the Court finds that John Doe actually committed the *same crime* for which Guivas is charged, section 2423(a), which provides as follows:

> A person who knowingly transports an individual who has not attained the age of 18 years . . . in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a). According to the FBI affidavit supporting the criminal complaint, John Doe picked up Jane Doe from LIPS strip club at 4:30 a.m., transported her to a residence in Ocean Park, had sex with her twice, and paid her $100.  (Docket No 3-1 at

Criminal No. 14-080 (FAB)                                               11

p. 5.)  Based on these facts, all of the elements of a section 2423(a) violation are satisfied as to John Doe.[7]

The Court is not persuaded, however, that John Doe and defendant Guivas committed the same crime "under roughly the same circumstances."  A significant difference in circumstance is the relative knowledge that each individual had, or should have had, that Jane Doe was a minor.  Jane Doe introduced herself to defendant Guivas by telling him her name and age.  (Docket No. 3-1 at p. 2.)  Her age came up again later, at Guivas's house, when Guivas instructed Jane Doe to tell people that she was nineteen years old.  Id.  The fact that Guivas let Jane Doe use his cell phone to contact her family after she was with him for a few hours, instructing her to tell her family that she was "OK," further suggests that he was aware she was a minor.  See id. at p. 3.  In contrast, there is no evidence that Jane Doe told John Doe that she was under eighteen years old.  Nor is there evidence that John Doe otherwise knew or had reason to know that Jane Doe was a minor.

Although knowledge of the victim's age is not an element of 18 U.S.C. § 2423(a), and therefore mistake as to age is not an

---

[7] There is no evidence that the John Doe's friends or the "unknown male" in the taxi with John Doe had the requisite intent that illegal sexual activity would take place when Jane Doe was transported, or that they conspired with John Doe or aided and abetted his transportation of Jane Doe.  The Court therefore finds it unlikely that John Doe's friends and the "unknown male" could have been charged with violating 18 U.S.C. § 2423(a), even as aiders and abettors or co-conspirators.

Criminal No. 14-080 (FAB)                                                12

available defense, see United States v. Tavares, 705 F.3d 4, 20 (1st Cir. 2013), the United States explains that knowledge of a victim's age has an important bearing on its decision to charge someone, (Docket No. 107 at p. 13).  The United States offers the following information on its enforcement priorities and policy:

> [I]t is safe to say that in every one of the more than 45 cases where the United States has charged individuals with a violation under Section 2423(a) since September 2012, the existence of a possible mistake of the age of the victim was considered, and in each and every case charged, the defendants either knew or had reason to know that the person transported was a minor.  This case is no different.

(Docket No. 107 at p. 13.)

The Court finds that the United States legitimately and reasonably considered Guivas's and John Doe's knowledge of Jane Doe's age in deciding whom to prosecute.  Consideration of the offender's knowledge of the victim's underage status goes to "'the strength of the case, the prosecution's general deterrence value, [and] the Government's enforcement priorities,'" Magana, 127 F.3d at 9 (quoting Wayte, 470 U.S. at 607), because it focuses on offenders who had the intent to exploit a child.

Defendant Guivas responds to the United States' non-discriminatory explanation by attacking Jane Doe's credibility. He "concede[s] that according to the report of investigation[, Jane Doe] alleges that she told Guivas she was [fifteen years old]."

(Docket No. 116 at p. 5.)  He then argues that "[o]n many occasions[,] the Government's evidence contradicts [Jane Doe's] version of the facts." Id.  Guivas does not fully flesh out this argument, however, and it is unclear to the Court how Jane Doe's credibility or lack thereof establishes that Guivas's prosecution had a discriminatory effect.  Significantly, Guivas presents no evidence that contradicts the United States' evidence that Guivas knew Jane Doe's age and that John Doe did not.

Thus, defendant Guivas and John Doe did not commit the same crime "under roughly the same circumstances" because Guivas knew Jane Doe was a minor and John Doe did not.  Therefore, Guivas has failed to show, either with "clear evidence" (to obtain dismissal of the indictment) or "some evidence" (to obtain discovery and a hearing), that the United States declined to prosecute a "similarly situated offender."

**C.   Discriminatory Intent**

Even though defendant Guivas has failed the first prong of the selective-prosecution analysis, the Court briefly addresses the second prong: discriminatory intent.  "Discriminatory intent can be shown by either direct or circumstantial evidence." United States v. Deberry, 430 F.3d 1294, 1299 (10th Cir. 2005).  Here, Guivas reasons that "it is hard to find a non-discriminatory reason" why he is the only one facing charges, and that "there is simply no

Criminal No. 14-080 (FAB)                                                   14

reasonable explanation" why John Doe and others were not charged. (Docket No. 104 at p. 11.)  In its opposition, the United States offers a non-discriminatory reason why Guivas is the only one facing charges:  he is the only one who knew or had reason to know that Jane Doe was a minor.  (Docket No. 107 at pp. 13-14.)  As discussed above, the Court accepts this countervailing reason as legitimate.  Guivas presents no other evidence to support his allegation that the United States acted with discriminatory intent. Therefore, the Court finds that Guivas failed to carry his burden on the second prong of the selective-prosecution test.

### III.  CONCLUSION

In his claim of selective prosecution, defendant Guivas has failed to make a threshold showing of discriminatory effect and discriminatory motive.  The Court therefore **DENIES** defendant Guivas's motion to dismiss the indictment as well as his requests for discovery and a hearing on this matter, (Docket No. 104).

**IT IS SO ORDERED**.

San Juan, Puerto Rico, May 29, 2015.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE